```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

NICHOLAS TORBICKI,

                      Plaintiff,          17-CV-386(MAT)

                v.                              **DECISION**
                                                  **and ORDER**
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                      Defendant.
_____

## **INTRODUCTION**

Nicholas Torbicki, ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt.##12, 14.

## **BACKGROUND**

### **A. Procedural History**

Plaintiff protectively filed an application for SSI on June 8, 2013, alleging disability beginning October 1, 2012, due to posttraumatic stress disorder ("PTSD"), anxiety, agoraphobia, a herniated disc, a tear in his right nerve root, and spinal stenosis. T. 100, 180, 199. His application was initially denied,

and a hearing followed before Administrative Law Judge ("ALJ") Sharon Seeley on June 11, 2015. T. 20-68, 100. After The ALJ issued a decision finding that Plaintiff was not disabled, Plaintiff requested Appeals Council review of the hearing decision. T. 1-3, 19, 100-19. After reviewing the ALJ's decision, the Appeals Council issued a decision finding that Plaintiff was not disabled from June 8, 2013, through August 19, 2015. T. 1-8, 174-78.

The issue before the Court is whether the Commissioner's decision that Plaintiff was not disabled is supported by substantial evidence and free of legal error. See Pl. Mem. (Dkt. #12-1) 17-30; Def. Mem. (Dkt. #14-1) 11-23.

**B.　The ALJ's Decision**

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA"), see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found: (1) Plaintiff did not engage in substantial gainful activity since his June 8, 2013, application date; (2) he had the severe impairments of substance abuse disorder (alcohol, cocaine, and marijuana), generalized anxiety disorder, PTSD, panic disorder with agoraphobia, and lumbar degenerative disease; and (3) his impairments did not meet or equal the Listings set forth at 20 C.F.R. § 404, Subpt. P, Appx. 1. The ALJ found that Plaintiff

retained the residual functional capacity ("RFC") to perform a range of light work with additional limitations: must stand for 5 minutes after sitting for 30 minutes, sit for 5 minutes after standing for 30 minutes, could only frequently balance, kneel, crouch, crawl, or climb stairs or ramps, occasionally climb ladders, ropes, or scaffolds, could only occasionally understand, remember, and carry out simple instructions and tasks, make simple work-related decisions commensurate with such tasks, and respond appropriately to ordinary levels of supervision in a customary work setting, have occasional, incidental interaction with coworkers and the general public, work in an environment that did not involve frequent changes in work routines or settings, did not require travel in unfamiliar places or use of public transportation, and would permit him to be off- task up to 10 percent during the work day in addition to customary breaks.  The ALJ further found that Plaintiff could not perform his past relevant work and that there were jobs that existed in significant numbers in the national economy which could be performed by a person of Plaintiff's age, education, vocational background, and RFC, such as housekeeper and storage facility clerk. T. 102-115. The ALJ concluded that Plaintiff was not disabled under the Act.

**C.  The Appeals Council Decision**

The Appeals Council adopted the findings and conclusions of the ALJ, with the exception of modifying the RFC determination in

that Plaintiff was capable of understanding, remembering, and carrying out simple instructions and tasks, making simple work-related decisions commensurate with such tasks, and responding appropriately to ordinary levels in a customary work setting, thus omitting the "occasional" restriction of these tasks as previously set forth by the ALJ. T. 7, 105, 175.

## DISCUSSION

**A. Scope of Review**

A federal court should set aside the Commissioner's decision to deny disability benefits only where it is based on legal error or is not supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted).

**B. RFC Finding**

Plaintiff contends that the ALJ and Appeals Council's review failed to apply the proper legal standard because they both ignored substantial evidence contained in the record. Pl. Mem. (Dkt. #12-1) 17-27.

To the extent that Plaintiff argues that the ALJ erred in finding that Plaintiff could only occasionally understand, remember, and carry out simple instructions and tasks, make simple work related decisions, and respond appropriately to ordinary

4

levels of supervision, see Pl. Mem. 17, the ALJ's decision was modified by the Appeals Council on March 9, 2017, which found that "the [ALJ's] finding that the claimant is only occasionally able understand, remember and carry out simple instructions and tasks, make simple work-related decisions commensurate with such tasks, and respond appropriately to ordinary levels of supervision in a customary work setting is not supported by substantial evidence." T. 5. Thus, any error by the ALJ in this regard has already been considered and corrected by the Appeals Council.

Plaintiff also argues that the ALJ erroneously relied on the stale opinions of a consultative examiner and non-examining state agency psychological reviewer because those opinions were not consistent with the totality of the medical evidence. Pl. Mem. 19-26. The relevant factors to be considered in determining what weight to afford a medical opinion include the length, nature and extent of the treatment relationship; relevant evidence supporting the opinion; the consistency of the opinion with the record as a whole; the treating source's area of specialization, if any; and any other relevant factors brought to the Commissioner's attention. See 20 C.F.R. §§ 404.1527(c), 416.927(c); Social Security Rulings ("SSR") 06-03p and 96-2p. A treating physician's opinion is due controlling weight only if that opinion is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with substantial evidence of record. 20 C.F.R.

5

§§ 404.1527(c)(2), 416.927(c)(2). When a treating source's opinion is not afforded controlling weight, the factors listed above are considered in determining what weight to afford the opinion. See 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). SSR 06-03p states that "[i]n addition to evidence from 'acceptable medical sources,' [the ALJ] may use evidence from other sources," as defined in 20 C.F.R. §§ 404.1513(d) and 416.913(d), "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." Pursuant to SSR 06-03p, the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) are also applicable to the evaluation of opinion evidence from "other sources."

1. **Mental RFC Finding**

On the record before the Court, the opinion of review physician Dr. Echevarria that Plaintiff had an affective disorder, anxiety disorder, and substance abuse disorder; could understand and remember very short and simple instructions and ask simple questions and request assistance; and was moderately limited to understand and remember detailed instructions, interact appropriately with the general public, accept instructions, respond to change, and respond appropriately to criticism, was generally consistent with the balance of the medical evidence. T. 84-95.

Dr. Duffy, the consultative examiner, found that Plaintiff could follow and understand simple directions and instructions;

maintain attention and concentration; maintain a regular schedule; could perform complex tasks independently; could make appropriate decisions; would have mild difficulties in learning new tasks and relating adequately with others; and would have mild to moderate difficulties dealing appropriately with stress at times. T. 109, 359. Dr. Duffy concluded that Plaintiff's difficulties were not significant enough to interfere with his ability to function on a daily basis. T. 359.

The medical record, including the recent treatment notes, are more consistent with the opinions of Drs. Echevarria and Duffy, and less consistent with the restrictive opinion of Anna Shurmatz, LCSW, who diagnosed Plaintiff with PTSD, major depression, panic disorder with agoraphobia; and opined that Plaintiff was either seriously limited, unable to meet competitive standards, or had no useful ability to function in 11 of 16 mental abilities and aptitudes for unskilled work, including dealing with normal work stress, respond appropriately to changes in a routine work setting, and asking simple questions or requesting assistance. T. 349-50.[1]

---

[1] Shumatz also opined that Plaintiff had a "limited but satisfactory" ability to remember work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, maintain attention for two hour segment, maintain regular attendance, be punctual within customary, usually strict tolerances.

A subsequent questionnaire completed in 2015 by Shumatz was even more restrictive, yet indicated a Global Assessment of Functioning ("GAF") score of 52 on both forms. A score of 52 reflects "Moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM") at 34 (4th ed. 2000). The GAF scale is no longer

The medical records from 2013 to 2015 are comprised of two consultative examinations; mental health treatment notes from Kaleida, Erie County Medical Center, and BryLin Hospital; and therapy records from the Drug Abuse, Research and Treatment ("DART") program.

The majority of the records indicate that Plaintiff regularly exhibited symptoms of anxiety and depression, yet he presented with stable mood and appropriate affect, was alert and oriented with clear thoughts and appropriate dress. He reported that prescription medications helped, and that his self-medication with marijuana exacerbated his depression and anxiety. He further reported being content upon stopping the use of marijuana. Plaintiff's opioid addiction was in full remission, and he attended DART sessions four times weekly by public transportation. He also reported to his providers that he was taking care of his parents, who were both disabled. T. 277, 282, 288, 290, 383, 401, 406, 408, 423, 426.

An April 25, 2011, Intake Assessment from Kaleida indicates that Plaintiff exhibited "euthymic mood, reports anxiety but affect & behaviors do not support this," and he reported that he was "not interested in work due to disability claim. Does not follow through with medical care." T. 280.

Drug counseling records from 2011 to 2013 demonstrate regular attendance to sessions, during which Plaintiff was on-time and

---

included in the most recent addition of the DSM. Packard v. Berryhill, No. 16-CV-0560, 2018 WL 3651330, at *7 (W.D.N.Y. Aug. 1, 2018).

8

attentive, and reported no desire to use opiates. T. 298-345, 392-462.

The most recent records, submitted to the Appeals Council for review, indicate that Plaintiff was evaluated by Nurse Practitioner April Kilgour from June to August, 2015. T. 481-500. NP Kilgour noted that Plaintiff was positive for depression, bipolar, panic/anxiety, and PTSD. He was oriented to person, place, and time, was well-groomed, with depressed mood and appropriate affect. He was noted to have normal speech, goal directed thought process, normal perceptions, and fair insight and judgment with no significant changes other than fluctuations between poor and fair concentration. T. 490-91, 499-500. Thus, the balance of the medical records do not support Ms. Schumatz's restrictive assessment of Plaintiff's ability to perform work-related tasks.

Ms. Shumatz's opinions were also afforded "little weight" by the ALJ because she was not an acceptable medical source. T. 109. Social workers, among other types of professionals, are not "acceptable medical sources," but rather are considered "other sources." See 20 C.F.R. §§ 404.1513(d)(1)-(4), 416.913(d)(1)-(4); SSR 06-03P, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). Here, the ALJ properly evaluated Ms. Shumatz's opinion as such pursuant to the applicable regulations. See 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); SSR 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996); SSR 06-03P, 2006 WL 2329939, at *3-4. The ALJ also noted

9

that Ms. Shumatz completed a check-box form in rendering both the 2013 and 2015 opinions. See Camille v. Colvin, 652 Fed.Appx. 25 (2d Cir. 2016) (among good reasons for affording treating source limited weight included source's opinion conflicted with own notes, and the check-box form requested narrative explanation which was not provided). Finally, Ms. Shumatz' opinions were inconsistent with those of the consultative examiner and the agency review physician, and, as the ALJ observed, her assessment of a GAF score of 52 was inconsistent with her opinion that Plaintiff had major impairments in most areas of functioning. T. 113.

Even if the Court were to consider Ms. Shumatz a treating physician, the Second Circuit has held that such an opinion is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute substantial evidence. "Under the applicable regulations, even 'nonexamining sources' may 'override treating sources' opinions, provided they are supported by evidence in the record.'" Netter v. Astrue, 272 Fed.Appx. 54, 55–56 (2d Cir. 2008) (citing Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993)); see also Snyder v. Colvin, 667 Fed.Appx. 319, 320 (2d Cir. 2016) ("The opinion of a treating physician is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence."); Camille, 652 Fed.Appx. 25 (2d Cir. 2016) (ALJ was permitted to conclude that

consultative examiner's opinion was more reliable than treating source's opinion).

The Court further rejects Plaintiff's argument that the ALJ impermissibly relied upon Dr. Echevarria's opinion because it was "stale." Pl. Mem. 19. The record indicates that Plaintiff's condition remained generally unchanged through 2015. See Jones v. Colvin, No. 13-CV-06443, 2014 WL 2560593, at *7 (W.D.N.Y. June 6, 2014) (consultative examiner's opinion was not stale where Plaintiff failed to show that her condition had deteriorated after the report).

### 2. Physical RFC Finding

Plaintiff also argues that the ALJ erred in determining his physical RFC. Specifically, Plaintiff contends that the ALJ's conclusion that he was able to sit and stand for thirty minute increments with a five minute change of position between was not supported by substantial evidence. Plaintiff's argument lacks merit.

Consultative examiner Dr. Donna Miller examined Plaintiff on August 15, 2013, and opined that he had a "mild to moderate limitation for heavy lifting, bending, carrying, reaching, pushing, and pulling." T. 354. Dr. Miller did not assess any limitations in Plaintiff's ability to sit or stand. The ALJ gave "great weight" to Dr. Miller's opinion, but rejected her conclusion that Plaintiff had a reaching limitation, explaining that it was not supported by

her examination, which showed a full range of motion in the shoulders, elbows, forearms, and wrists bilaterally. T. 106-107.

Dr. Miller's consultative examination, which assessed no limitations in sitting or standing, is fully consistent (and actually less restrictive) than the ALJ's conclusion that Plaintiff was capable of sitting or standing for 30 minutes at a time. The ALJ's decision to credit Plaintiff's claims that he had difficulties with sitting and standing and include additional limitations in the RFC finding was permissible and did not result in any harm to Plaintiff. Accordingly, it is not a basis for reversal or remand of the Commissioner's final determination. See Castle v. Colvin, No. 1:15-CV-00113(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) ("the fact that the ALJ's RFC assessment did not perfectly match Dr. Balderman's opinion, and was in fact more restrictive than that opinion, is not grounds for remand"); Savage v. Comm'r of Soc. Sec., No. 2:13-CV-85, 2014 WL 690250, at *7 (D. Vt. Feb. 24, 2014) (finding no harm to claimant where ALJ adopted an RFC determination that was more restrictive than medical source's opinion).

The Court further finds no error in the ALJ's rejection of Dr. Miller's opinion that Plaintiff had a reaching limitation. An ALJ has discretion to weigh the opinion of a consultative examiner and attribute the appropriate weight based on his review of the entire record. See Burnette v. Colvin, 564 F. App'x 605, 605 (2d Cir.

2014) (finding that the ALJ properly exercised his discretion in giving little weight to the consultative examiner's opinion, as it was inconsistent with the record as a whole). "There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations," and the ALJ is free to disregard identified limitations that are not supported by the evidence of record. Pellam v. Astrue, 508 F. App'x 87, 89 (2d Cir. 2013). Here, the ALJ appropriately explained that the reaching limitation was not supported by the evidence of record, including Dr. Miller's own examination of Plaintiff.

Accordingly, the Court finds that the ALJ's residual functional capacity determination was proper as a matter of law and supported by substantial evidence in the record.

## C. Credibility Finding

Plaintiff also argues that the ALJ failed to properly evaluate his credibility. Pl. Mem. 27. In assessing a claimant's credibility, an ALJ is instructed to consider whether his subjective complaints are "consistent with the medical and other objective evidence." Wells v. Colvin, 87 F. Supp. 3d 421, 431 (W.D.N.Y. 2015). "The ALJ's decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that

weight." Cichocki v. Astrue, 534 Fed.Appx. 71, 76 (2d Cir. 2013) (internal quotation omitted). An ALJ is entitled to deference when making credibility findings and can only be reversed if those findings are patently unreasonable. Andrisani v. Colvin, No. 16-CV-00196, 2017 WL 2274239, at *3 (W.D.N.Y. May 24, 2017).

The ALJ summarized the medical evidence, Plaintiff's testimony, and concluded that his testimony was credible, "but not to the extent alleged based upon medical evidence." T. 106. Contrary to Plaintiff's assertion, the ALJ did explain why she found his testimony less than credible. She pointed to ALJ's daily activities, which included caring for his disabled parents, cooking, cleaning, doing laundry, and shopping. T. 107-08, 113, 258, 352. She also noted that Plaintiff sought work during the relevant period. T. 110, 112, 425.

The ALJ further noted inconsistencies between Plaintiff's testimony and the other evidence of record, including discrepancies about his drug use (T. 47, 50, 113, 430), his attempts at working (T. 113, 425), and caring for his parents (T. 113, 258). The ALJ then explained that "[n]one of these inconsistencies would be sufficient to support a finding that the claimant's allegations regarding the intensity, persistence and limiting effects of his [sic] are not fully credible, but considered with the other evidence of record they indicate the need for caution in relying on the claimant's statements absent corroboration elsewhere in the

14

record." T. 113. Thus, the ALJ did not exclusively rely on Plaintiff's statements, but rather considered them as a factor in her credibility determination. Her rejection of his testimony was therefore "set forth with sufficient specificity to permit intelligible plenary review of the record," Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir.1988), and the credibility determination is therefore supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision is not legally flawed and is supported by substantial evidence in the record. Accordingly, Defendant's motion for judgment on the pleadings is granted, and Plaintiff's motion for judgment on the pleadings is denied. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         August 8, 2018